Thomas J. Cafferty, Esq.
Nomi I. Lowy, Esq.
SCARINCI & HOLLENBECK, LLC
ATTORNEYS AT LAW
1100 Valley Brook Avenue
P.O. Box 790
Lyndhurst, New Jersey  07071-0790
(201) 896-4100
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BACHMANN SOFTWARE & SERVICES, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>INTOUCH GROUP, INC.,<br><br>          Defendant. | Civil Action No. 2025-08 (KSH)<br><br>**CERTIFICATION OF GLENN BACHMANN IN OPPOSITION TO MOTION TO DISMISS OR TRANSFER** |

GLENN BACHMANN hereby certifies as follows:

1.   I am the President of Bachmann Software & Services, LLC, Plaintiff in the above-captioned matter.  As such, I am fully familiar with the facts set forth herein.

2.   Plaintiff, Bachmann Services & Software, LLC ("Bachmann" or "Bachmann Software") is a developer of mobile software applications for smartphones and other mobile devices. Plaintiff's corporate offices are located at 270 Sparta Avenue, Suite 104-318, Sparta, New Jersey.  Plaintiff has no other

offices other than those located in New Jersey. With the exception of Julie O'Neil, Bachmann's Customer Support Manager, who works from her home in Philadelphia and who had no dealings with or relationship with the Intouch project whatsoever, all employees of Plaintiff work in New Jersey.

3. On or about December 22, 2006 I noted a message posted by Joe Schlessinger, Director of Technical Product Management of Intouch, on a developer forum, describing a mobile device software development project for which Intouch was looking to contract with developers. I was in New Jersey when I saw and read the posted message.

4. I contacted Mr. Schlessinger from New Jersey and, over the course of the next few weeks, we exchanged information, via telephone and e-communications, on the potential project and the background and experience of Bachmann and its principal and employees. Based on the information Mr. Schlessinger provided to me, I drafted a proposal for the work to be performed, and, on January 23, 2007, provided it along with a standard development agreement of Bachmann Software. All of this occurred while I was working in New Jersey and Mr. Schlessinger was (presumably) in California.

5. I flew out to San Francisco on January 29, 2007 to discuss the proposal with Intouch. Intouch made and paid for

all airline, hotel and other travel arrangements from New Jersey to California.

6.   The decision was made to proceed with a fixed-cost development contract covering a specific set of functionality to be implemented by the Bachmann Software team, in New Jersey, over the course of the first few months of the project.

7.   Work proceeded immediately, with me as the primary developer and project liaison from Bachmann Software. Negotiations concerning the written development agreement continued for another month.   The final draft was signed on March 8, 2007.   The entirety of this contract process and exchange occurred while I was in New Jersey and Intouch was communicating with me in New Jersey.   Exhibit A to the March 8, 2007 agreement set forth the specific "Statement of Work" to be provided by Bachmann Software under this initial development agreement.   The March 8, 2007 Agreement clearly identifies Bachmann Software as a New Jersey limited liability corporation with its corporate offices located in Sparta, New Jersey.

8.   Exhibit A, attached, is a true copy of Defendant's Responses   to   Plaintiff's   Request   for   Admissions   – Jurisdictional.

9.   As contemplated, Bachmann performed the services outlined in Exhibit A while Bachmann was in New Jersey.   Intouch worked closely with Glenn Bachmann continuously during this

period by transmitting substantive e-communications to Mr. Bachmann in New Jersey and initiating and participating in telephone conferences with Mr. Bachmann while he was in New Jersey.

10. At various times, Intouch requested that Bachmann Software perform services outside the scope of the Statement of Work set forth in Exhibit A to the initial agreement.

11. The parties, thus, negotiated a new document under which Bachmann Software could perform additional services for Intouch on an hourly basis. Specifically, on April 27, 2007, with the initial set of project requirements nearing completion, an Exhibit B was attached to the March 8, 2007 contract, in which Intouch would retain Bachmann Software on an hourly rate basis to work on further tasks as outlined in Exhibit B, under a Product Management Role.

12. At all times during the process, Bachmann Software and its principal and employees remained in New Jersey and Intouch exchanged information with and transmitted information to Bachmann Software in New Jersey.

13. Bachmann Software provided product management services to Intouch on an hourly basis, as agreed, pursuant to Exhibit B of the initial agreement. These services, with the exception of periodic project planning meetings which were held in California, were performed by Bachmann Software in New Jersey.

14.   Thereafter, as Intouch further defined the scope of work needed, the parties negotiated a new agreement for Bachmann Software to provide "mobile software development services."

15.   On or about October 24, 2007, the contract for such mobile software development services was executed.   This contract (which is the subject of the within litigation) was created to cover a new project structure called "Sprints" under which a series of mini-projects would be defined and completed in relatively short (2 to 3 weeks) periods of time.   This contract was negotiated over the telephone and via email, with Bachmann Software and its principal and employees located in New Jersey during this process and Intouch (presumably while in California) exchanging information with and transmitting information to Bachmann in New Jersey.   The final discussions on the contract took place at a trade show (CTIA) hotel room in California on October 24. CTIA is the International Association for the Wireless Telecommunications Industry.   CTIA's trade show was held in October, 2007 in San Francisco, California, and Intouch arranged and paid for my trip to attend the trade show. On October 25, 2007, I received, in New Jersey, the signed copy of the October 24, 2007 agreement.

16.   This contract, as did the March 8, 2007 agreement, clearly identifies Bachmann Software as a New Jersey corporation and provides, *inter alia*, that all notices and communications to

be provided by Intouch to Bachmann Software under the agreement shall be sent by Intouch to Bachmann Software at Bachmann Software's corporate address in Sparta, New Jersey.

17. Significantly, over the span of the long-standing, multi-faceted business relationship between the parties, Bachmann Software and Intouch were in constant communication, working very closely together on a daily basis by way of telephone and e-communications. Arrangements for telephone conferences between the parties were made by Intouch itself, providing the mechanism for Glenn Bachmann to call in and participate in the conferences from New Jersey. E-communications were transmitted from Intouch to Bachmann Software in New Jersey and flowed from Bachmann Software in New Jersey to Intouch. Indeed, during the course of their relationship, ***more than five thousand (5,000) e-communications were exchanged between the parties.*** In excess of approximately one thousand five hundred (1,500) of the e-communications between the parties related to the October 24, 2007 agreement.

18. As the primary project liaison at Bachmann Software, I also made several short 2 to 3 day trips to meet with Intouch in California for the purposes of project planning and status meetings for the various agreements. The primary focus of these meetings did not involve programming, rather the bulk of the meetings was to define further the work that Bachmann Software

was to perform back in New Jersey. Intouch arranged and paid for these trips by Glenn Bachmann from New Jersey.

19. I was in California on the following dates in connection with the March 8, 2007 and April 27, 2007 agreements with Intouch, which are, as noted, different agreements from the contract that forms the basis of Plaintiff's Complaint:

> July 17 and 18, 2007
> August 8 and 9, 2007
> September 10 and 11, 2007
> September 27 and 28, 2007
> October 21-24, 2007 (CTIA trade show)

I was in California on the following dates for planning meetings relating to the contract with Intouch that forms the basis for Plaintiff's Complaint:

> November 19 and 20, 2007
> December 10 and 11, 2007

20. Programming services provided by Bachmann Software under the various agreements between the parties were performed in New Jersey by me and by Bachmann Software's developer, Peter Angiuoli. I provided services under the contracts approximately 5 days a week, 40 hours per week, from my office in New Jersey, between January 2007 and January 2008, with the exception of the aforementioned 2 to 3 day trips to California for project planning. I worked on the Intouch contracts approximately 260 days total, with 246 of them worked in New Jersey. Peter Angiuoli provided services under the

contracts approximately 5 days a week, 40 hours per week, from his office in New Jersey, between July 2007 and January 2008. Mr. Angiuoli worked approximately 140 hours on the Intouch contracts, all of those hours worked in New Jersey. On no occasion did Mr. Angiuoli perform any of the contract services outside of New Jersey or visit California in connection with any of the agreements between the parties.

21. Defendant has made eleven payments under the various agreements between the parties. All Intouch payments made to Bachmann Software under the agreements were deposited in New Jersey banks. Payments on the March 8, 2007 and April 27, 2007 agreements were made on or about the following dates:

> February 1, 2007
> March 15, 2007
> April 13, 2007
> June 5, 2007
> June 22, 2007
> July 19, 2007
> August 10, 2007
> September 12, 2007
> October 25, 2007
> November 6, 2007
> January 2, 2008

All of these payments were made in the form of a check made out to Bachmann Software and mailed by Intouch to Bachmann Software's business address in Sparta, New Jersey, except, upon information and belief, on two occasions, when checks were handed to me in California by Patty McLeod when the payment date coincided with a project planning visit.

22.   Only one payment was made by Intouch on the contract that is the subject of Plaintiff's Complaint.   That payment was made on or about January 7, 2008 and was sent by Intouch to Bachmann Software at Bachmann Software's New Jersey corporate address.   Payment, which was due to be sent to New Jersey for Sprints 8, 9, and 10, in the amount of $59,000 was never sent to Bachmann by Intouch and it is those missed payments that form the basis for Plaintiff's Complaint.

23.   Attached as Exhibit B (Bates Nos. BACHMANN 136-143) are true copies of various e-communications sent by Intouch or Bachmann Software.   Certain non-relevant material, which Intouch may argue is proprietary, has been redacted for the purposes of this motion only, as it is not relevant to the issues of jurisdiction or venue.

24.   Attached as Exhibit C are true copies of Defendant's Answers to Interrogatories – Jurisdictional.

25.   Attached as Exhibit D are true copies of Defendant's responses to Plaintiffs' Document Demand – Jurisdictional.

I hereby certify and declare under penalty of perjury that the foregoing is true and correct.      Executed    on    July    9, 2008.

GLENN BACHMANN

# EXHIBIT A

Katie A. Gummer, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
(973) 622-4444
KG-1349

Kenneth E. Keller (CSBN 71450) (admitted *pro hac vice*)
Anne E. Kearns (CSBN 183336) (admitted *pro hac vice*)
Krieg, Keller, Sloan, Reilley & Roman, LLP
114 Sansome Street
Fourth Floor
San Francisco, CA 94114
(415) 249-8330

Attorneys for Defendant
Intouch Group, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BACHMANN SOFTWARE & SERVICES, LLC<br><br>　　　　Plaintiff,<br><br>v.<br><br>INTOUCH GROUP, INC.,<br><br>　　　　Defendant. | Civil Action No. 2025-08 (KSH)<br><br>**DEFENDANT'S RESPONSES TO REQUEST FOR ADMISSIONS (JURISDICTIONAL)** |

To:    Nomi I. Lowry, Esq.
       Scarinci & Hollenbeck, LLC
       1100 Valley Brook Avenue
       P. O. Box  790
       Lyndhurst, New Jersey  07071-0790
       Attorneys for Plaintiff

Pursuant to Federal Rule of Civil Procedure 36, and the Court's Order on Informal Application, Defendant Intouch Group, Inc. ("Intouch") hereby responds to the Request for Admissions (Jurisdictional) of Plaintiff Bachmann Software & Services LLC ("Bachmann") as follows:

Preliminarily, Intouch's investigation and discovery in this matter are ongoing, and Intouch specifically reserves the right to supplement these responses as required by law to the extent that any further information responsive hereto becomes reasonably available to it in the course of such investigation and discovery.

## GENERAL OBJECTIONS

The following objections apply to each and every Request contained in Bachmann's Requests for Admissions (Jurisdictional) (the "Requests"):

A.      Intouch objects to the Requests to the extent that they attempt to impose obligations on Intouch greater than those imposed by the Federal Rules of Civil Procedure.

B.      Intouch objects to the Requests to the extent they may be construed to request disclosure of information protected from disclosure by the attorney work-product doctrine, the attorney-client privilege, or is otherwise protected under applicable privileges, laws or rules. Intouch will construe each request as excluding from its scope any such information. Any response made herein should not be construed as an express or implied waiver of any applicable privilege or protection.

2

## RESPONSES TO REQUEST FOR ADMISSIONS

Request No. 1

At the time Defendant entered into the October 24, 2007 Development Agreement ("Agreement") with Bachmann Software & Services, LLC (Bachmann), intouch group (intouch) [sic] was aware that Bachmann was a New Jersey corporation.

Response to No. 1

Intouch admits that it was aware that Bachmann was a New Jersey corporation, but denies that Bachmann's services were required to be performed in New Jersey.

Request No. 2

Intouch understood and agreed that Glenn Bachmann would be performing services under the subject Agreement while he was physically located in the State of New Jersey.

Response to No. 2

Intouch objects that this request is vague and ambiguous as to time. Without waiving these objections, Intouch responds as follows. Intouch denies that it "understood and agreed" that Mr. Bachmann would be "performing services" under the subject Agreement while he was physically located in the State of New Jersey. Nothing in the Development Agreement requires Bachmann to "perform services" in New Jersey.

Rather, Bachmann (including Mr. Bachmann) was ultimately required to provide software development services and products (*e.g.*, source code), as set forth in the Development Agreement, to Intouch in California for Intouch's use. In fact, per the terms of the Development Agreement, Bachmann was required to transmit regularly source code to Intouch's code repository located at Intouch. (*See, e.g.*, Development Agreement, ¶ 1b.) Per the Development Agreement, "all code developed by Bachmann shall be stored at Intouch's repository." (*Id.*)

3

Bachmann, did in fact transmit regularly source code to Intouch's code repository (albeit such code was faulty, inadequate, dysfunctional, and laden with bugs, and caused Intouch countless hours and labor to fix and overhaul it).

In addition, the Development Agreement specifically states that Bachmann and Intouch will discuss efforts ahead in a "SCRUM Planning Meeting" and that Bachmann will attend these meetings in person (at Intouch) at the request of Intouch. (*See* Development Agreement, ¶ 1a.) Thus, per the terms of the Development Agreement, Bachmann was required to travel to California at the request of Intouch to perform services.

Notably, Glen Bachmann indicated to Intouch that it would be "productive" if he planned on being onsite at Intouch offices, in Berkeley, California, on a monthly basis. Mr. Bachmann did in fact visit California on numerous occasions (eight) during the course of their relationship to provide services under the Development Agreement (as well as the prior agreements), to attend team and "SCRUM" meetings, to provide "programming" and other software development services, and to attempt to "debug" and/or fix the faulty services and products he had previously provided to Intouch, among other things. While visiting Intouch on these eight occasions, Mr. Bachmann used Intouch's facilities as well as his own lap top to perform a significant amount of work (*e.g.*, programming, fixing bugs).

Upon information and belief, Bachmann could "perform services" under the Development Agreement from *any* location using his lap top computer provided that the lap top has the appropriate software applications for the work and a mechanism for connecting to a remote server or to the Internet (e.g., either via a physical cable connection or wireless link). Since Mr. Bachmann did in fact perform certain "services" from his lap top while physically present at Intouch, it is reasonable to conclude that he had and has the capability of performing

4

such services remotely from any location.  Upon information and belief, on at least one occasion, Mr. Bachmann indicated to Intouch that he would be "performing services" for Intouch while he was on location for another out-of-state client.

Request No. 3

Intouch prepared the initial draft of the Agreement entered into between the parties.

Response to No. 3

Admitted that Intouch prepared the initial draft of the Agreement and avers that the Agreement was thereafter further negotiated by the parties and finalized while Mr. Bachmann was in California at Intouch's facilities.  Accept as admitted, denied.

Request No. 4

Intouch understood and agreed that Bachmann's developer, Peter Angiuoli, would be performing services under the subject Agreement while physically located in the State of New Jersey.

Response to No. 4

Intouch objects that this request is vague and ambiguous as to time.  Without waiving these objections, Intouch responds as follows.  Intouch denies that it "understood and agreed" that Bachmann's developer, Peter Angiuoli, would be performing services under the subject Agreement while physically located in the State of New Jersey.  Nothing in the Development Agreement requires Mr. Angiuoli to "perform services" in New Jersey.

Rather, the Development Agreement simply requires that Bachmann "insure that there are at least two engineers on Bachmann's team at all times who are proficient in all aspects of the mobile software development effort in progress" for Intouch. (*See* Development Agreement, ¶ 1.)

5

Request No. 5

Intouch understood and agreed that programming produced by Bachmann for Intouch under the subject Agreement would be transmitted electronically from New Jersey to California.

Response to No. 5

Intouch objects that this request is vague and ambiguous as to time. Without waiving these objections, Intouch responds as follows. Intouch denies that it "understood and agreed" that programming produced by Bachmann for Intouch under the subject Agreement would be transmitted electronically from New Jersey to California. Nothing in the Development Agreement requires the electronic transmission of programming from New Jersey.

Rather, Bachmann was ultimately required to provide software development services and products (*e.g.*, source code), as set forth in the Development Agreement, to Intouch in California for Intouch's use. In fact, per the terms of the Development Agreement, Bachmann was required to transmit regularly source code to Intouch's code repository located at Intouch. (*See, e.g.*, Development Agreement, ¶ 1b.) Per the Development Agreement, "all code developed by Bachmann shall be stored at Intouch's repository." (*Id.*) Bachmann, did in fact transmit regularly source code to Intouch's code repository (albeit such code was faulty, inadequate, dysfunctional, and laden with bugs, and caused Intouch countless hours and labor to fix and overhaul it).

In addition, the Development Agreement specifically states that Bachmann and Intouch will discuss efforts ahead in a "SCRUM Planning Meeting" and that Bachmann will attend these meetings in person (at Intouch) at the request of Intouch. (*See* Development Agreement, ¶ 1a.) Thus, per the terms of the Development Agreement, Bachmann was required to travel to California at the request of Intouch to perform services.

Notably, Glen Bachmann indicated to Intouch that it would be "productive" if he planned on being onsite at Intouch offices, in Berkeley, California, on a monthly basis. Mr. Bachmann did in fact visit California on numerous occasions (eight) during the course of their relationship to provide services under the Development Agreement (as well as the prior agreements), to attend team and "SCRUM" meetings, to provide "programming" and other software development services, and to attempt to "debug" and/or fix the faulty services and products he had previously provided to Intouch, among other things. While visiting Intouch on these eight occasions, Mr. Bachmann used Intouch's facilities as well as his own lap top to perform a significant amount of work (*e.g.*, programming, fixing bugs).

Upon information and belief, Bachmann could "perform services" under the Development Agreement from *any* location using his lap top computer provided that the lap top has the appropriate software applications for the work and a mechanism for connecting to a remote server or to the Internet (e.g., either via a physical cable connection or wireless link). Since Mr. Bachmann did in fact perform certain "services" from his lap top while physically present at Intouch, it is reasonable to conclude that he had and has the capability of performing such services remotely from any location. Upon information and belief, on at least one occasion, Mr. Bachmann indicated to Intouch that he would be "performing services" for Intouch while he was on location for another out-of-state client.

Dated:    Newark, New Jersey

June 9, 2008

Katie A. Gummer, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102

87291                                                   7

# EXHIBIT B

**From:**   Joe Schlessinger [jschless@hotmail.com]
**Sent:**   Monday, February 12, 2007 3:29 PM
**To:**     intouch
**Cc:**                                **REDACTED**

**Subject:** Need your Internet favorites

Team:

As you know, the Strong Demo of iBrowz is launched and is on display at Madrid.


**REDACTED**


Regards
Joe


**REDACTED**

BACHMANN 136

| | |
|---|---|
| **From:** | Joshua Kaplan [josh@intouchgroup.com] |
| **Sent:** | Monday, February 19, 2007 8:16 PM |
| **To:** | Ben Camgros |
| **Cc:** | **REDACTED** |

**Subject:** iBrowz comments, thoughts....

All,

I spent the week in Europe using the iBrowz application.

**REDACTED**

**REDACTED**

REDACTED

REDACTED

BACHMANN 138

REDACTED

Thanks.

josh


--------------------------------

Joshua Kaplan • intouch group
☎ (510) 684-4787 📄 (800) 884-6629
✉ josh@intouchgroup.com

| From: | Patty MacLeod [patty@intouchgroup.com] |
| --- | --- |
| Sent: | Monday, October 08, 2007 2:05 PM |
| To: | Glenn Bachmann |
| Subject: | Re: Travel next week |

Thanks for the heads-up, Glenn.  I hadn't been informed of your next possible trip out here.  Carlos should be back in the office late this afternoon - he is driving back from So. Cal.  The Mexico trip (or not) is high on my list to get closure from him.

*Glenn Bachmann <glenn@bachmannsoftware.com>* wrote:

> Patty,
>
> Have travel plans firmed up for next week? I don't know if you were aware,
> but if there's no mexico trip, I was planning to come out to the intouch
> office to meet with the dev team next Wednesday and Thursday. So given the
> uncertainty, I guess it would be best to let you handle the booking of this
> trip - I'll hold off on my end.
>
> Thx,
> Glenn

**REDACTED**

---

| | |
|---|---|
| **From:** | Patty MacLeod [patty@intouchgroup.com] |
| **Sent:** | Friday, October 12, 2007 12:41 AM |
| **To:** | Diana Quintal; Glenn Bachmann |
| **Cc:** | Carlos Melcer |
| **Subject:** | The Mexico Trip is still in "pending" status |
| **Attachments:** | Itinerary CIE Trip 14OCT07.xls |

Carlos says he will not be able to confirm go or no-go until tomorrow afternoon.

I've attached the itineraries I have on hold for you to give you some planning info.  I will let you know if there are any further changes.

My apologies for any inconvenience this delay in confirming the trip has caused.

Patty

**REDACTED**

**REDACTED**

BACHMANN 142

REDACTED

REDACTED

BACHMANN 143

# EXHIBIT C

Katie A. Gummer, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
(973) 622-4444
KG-1349

Kenneth E. Keller (CSBN 71450) (admitted *pro hac vice*)
Anne E. Kearns (CSBN 183336) (admitted *pro hac vice*)
Krieg, Keller, Sloan, Reilley & Roman, LLP
114 Sansome Street
Fourth Floor
San Francisco, CA 94114
(415) 249-8330

Attorneys for Defendant
Intouch Group, Inc.


## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| BACHMANN SOFTWARE & SERVICES, LLC | Civil Action No. 2025-08 (KSH) |
| Plaintiff, | |
| v. | **DEFENDANT'S RESPONSES TO INTERROGATORIES (JURISDICTIONAL)** |
| INTOUCH GROUP, INC., | |
| Defendant. | |

To:    Nomi I. Lowry, Esq.
       Scarinci & Hollenbeck, LLC
       1100 Valley Brook Avenue
       P. O. Box  790
       Lyndhurst, New Jersey  07071-0790
       Attorneys for Plaintiff

Pursuant to Federal Rule of Civil Procedure 33, and the Court's Order on Informal Application, Defendant Intouch Group, Inc. ("Intouch") hereby responds to the Interrogatories (Jurisdictional) of Plaintiff Bachmann Software & Services LLC ("Bachmann") as follows:

Preliminarily, Intouch's investigation and discovery in this matter are ongoing, and Intouch specifically reserves the right to supplement these responses as required by law to the extent that any further information responsive hereto becomes reasonably available to it in the course of such investigation and discovery.

### GENERAL OBJECTIONS

The following objections apply to each and every interrogatory contained in Bachmann's Interrogatories (Jurisdictional) to Defendant (the "Interrogatories"):

A.     Intouch objects to each and every instruction, definition, and Interrogatory to the extent that they purport to impose upon Intouch any requirement of discovery obligation other than as set forth in the Federal Rules of Civil Procedure and any applicable Local Rule of this Court.

B.     Intouch objects to Bachmann's definition of "document" in the "DEFINITIONS" portion of the Interrogatories to the extent that such definition attempts to impose upon Intouch any duty of response, identification, and/or production beyond that called for by the Federal Rules of Civil Procedure and Evidence.

C.     Intouch objects to the Interrogatories to the extent they may be construed to request disclosure of information protected from disclosure by the attorney work-product doctrine, the attorney-client privilege, or is otherwise protected under applicable privileges, laws or rules. Intouch will construe each request as excluding from its scope any such information. Any response made herein should not be construed as an express or implied waiver of any applicable privilege or protection.

D.     Intouch objects to the definition of "identify" in the "DEFINITIONS" portion of the Interrogatories as overly broad and unduly burdensome.

2

## RESPONSES TO INTERROGATORIES

Interrogatory No. 1

If you contend that Bachmann Software & Services, LLC (Bachmann) was **not** to

perform services rendered under the subject Development Agreement while physically located in

the State of New Jersey, set forth all facts to support your contentions, including a breakdown of

each services to be performed outside of the State of New Jersey.

Response to No. 1

Intouch contends that Bachmann was not required to "perform services" rendered under

the subject Development Agreement while physically located in the state of New Jersey.

Nothing in the Development Agreement requires Bachmann to "perform services" in New

Jersey.

Rather, Bachmann was ultimately required to provide software development services and

products (*e.g.*, source code), as set forth in the Development Agreement, to Intouch in California

for Intouch's use.  In fact, per the terms of the Development Agreement, Bachmann was required

to transmit regularly source code to Intouch's code repository located at Intouch.  (*See, e.g.*,

Development Agreement, ¶ 1b.)  Per the Development Agreement, "all code developed by

Bachmann shall be stored at Intouch's repository." (*Id.*)  Bachmann, did in fact regularly

transmit source code to Intouch's code repository (albeit such code was faulty, inadequate,

dysfunctional, and laden with bugs, and caused Intouch countless hours and labor to fix and

overhaul it).

In addition, the Development Agreement specifically states that Bachmann and Intouch

will discuss efforts ahead in a "SCRUM Planning Meeting" and that Bachmann will attend these

meetings in person (at Intouch) at the request of Intouch.  (*See* Development Agreement, ¶ 1a.)

3

Thus, per the terms of the Development Agreement, Bachmann was required to travel to California at the request of Intouch to perform services.

Notably, Glen Bachmann indicated to Intouch that it would be "productive" if he planned on being onsite at Intouch offices, in Berkeley, California, on a monthly basis. Mr. Bachmann did in fact visit California on numerous occasions (eight) during the course of their relationship to provide services under the Development Agreement (as well as the prior agreements), to attend team and "SCRUM" meetings, to provide "programming" and other software development services, and to attempt to "debug" and/or fix the faulty services and products he had previously provided to Intouch, among other things. While visiting Intouch on these eight occasions, Mr. Bachmann used Intouch's facilities as well as his own lap top to perform a significant amount of work (*e.g.*, programming, fixing bugs).

Upon information and belief, Bachmann could "perform services" under the Development Agreement from *any* location using his lap top computer provided that the lap top has the appropriate software applications for the work and a mechanism for connecting to a remote server or to the Internet (*e.g.*, either via a physical cable connection or wireless link). Since Mr. Bachmann did in fact perform certain "services" from his lap top while physically present at Intouch, it is reasonable to conclude that he had and has the capability of performing such services remotely from any location. Upon information and belief, on at least one occasion, Mr. Bachmann indicated to Intouch that he would be "performing services" for Intouch while he was on location for another out-of-state client.

4

Interrogatory No. 2

If you contend that invoices from Bachmann to Intouch Group, Inc. (Intouch) were to be transmitted from Bachmann to Intouch from any location other than the State of New Jersey, set forth all facts to support your contention.

Response to No. 2

Intouch contends that Bachmann was not required to "transmit" invoices to Intouch from any particular location, including the State of New Jersey. Nothing in the Development Agreement required Bachmann to transmit invoices from New Jersey.

Rather, the Development Agreement requires Bachmann to submit invoices to Intouch, which is located in California, for the services furnished and other expenses incurred. (Development Agreement, ¶1c.)  In fact, throughout the course of their relationship, Bachmann emailed invoices to Intouch in California, which could have been accomplished from any location, and upon information and belief, personally handed a few invoices to Intouch during his visits to California.

Interrogatory No. 3

If you contend that any payments made by Intouch to Bachmann under the subject Agreement were sent to any location other than Plaintiff's business address in the State of New Jersey, set forth all facts to support your contention.

Response to No. 3

On at least two occasions, Intouch paid Mr. Bachmann in person while he was visiting Intouch's offices in California.  One was on or about July 18, 2007 (under prior agreements) and the other was on or about October 24, 2007.

Interrogatory No. 4

If you contend that any programming was performed by Bachmann under the subject

Agreement outside of the State of New Jersey, set forth all facts to support your contention.

Response to No. 4

As described above in response to Interrogatory No. 1, Mr. Bachmann visited California

on numerous occasions to provide services under the Development Agreement (as well as the

prior agreements), to attend team and "SCRUM" meetings, to provide "programming" and other

software development services, and to attempt to "debug" and/or fix the faulty services and

products he had previously provided to Intouch, among other things.

Specifically, during the course of their entire relationship, Mr. Bachmann visited Intouch

at its facilities in California on at least eight (8) separate occasions. On the first visit, on January

29, 2007, Mr. Bachmann visited Intouch for the kick-off, Phase 1 development meeting. During

the second visit, from July 16-18, 2007, Mr. Bachmann attended a routine team

interaction/planning and technical support meeting for meeting with visitors from CIE. On the

third visit, which occurred between August 7-9, 2007, Mr. Bachmann attended a routine team

interaction/planning session and technical support for a visit from Spice Networks. The fourth

visit occurred between September 9-11, 2007, during which time Mr. Bachmann attended a

routine team interaction and planning session. The fifth visit occurred on September 28-29, 2007

during which time Mr. Bachmann attended another team interaction and planning session. On

Mr. Bachmann's sixth visit, which occurred on October 21-24, 2007, he attended a routine

interaction/planning meeting and tech support at a CTIA conference. The seventh meeting

occurred between November 18-20, 2007, during which time he attended a routine team

interaction/planning meeting.  The last visit occurred between December 10-11, 2007, where Mr. Bachmann again attended a routine team interaction and planning meeting.

While visiting Intouch on these eight occasions, Mr. Bachmann used Intouch's facilities as well as his own lap top to perform a significant amount of "work" for Intouch (*e.g.*, programming, fixing bugs).  Upon information and belief, Bachmann could "perform services" under the Development Agreement from *any* location using his lap top computer provided that the lap top has the appropriate software applications for the work and a mechanism for connecting to a remote server or to the Internet (*e.g.*, either via a physical cable connection or wireless link).  Since Mr. Bachmann did in fact perform certain "services" from his lap top while physically present at Intouch, it is reasonable to conclude that he had and has the capability of performing such services remotely from any location.

Upon information and belief, on at least one occasion, Mr. Bachmann indicated to Intouch that he would be "performing services" for Intouch while he was on location for another out-of-state client.

Interrogatory No. 5

If you contend that any computers used by Bachmann to perform services under the subject Agreement are located outside of the State of New Jersey, set forth all facts to support your contention.

Response to No. 5

Intouch does not have first hand knowledge of all of the computers that Bachmann may have used to "perform" all of the "services" under the Development Agreement.  However, as indicated above, throughout the course of their relationship, Mr. Bachmann visited Intouch in California on several (eight) occasions during which time he "provided services" to Intouch

7

(including programming and fixing bugs). On those occasions, Mr. Bachman used the facilities at Intouch as well as his own lap top computer. Upon information and belief, Bachmann could "perform services" under the Development Agreement from *any* location using his lap top computer provided that the lap top has the appropriate software applications for the work and a mechanism for connecting to a remote server or to the Internet (*e.g.*, either via a physical cable connection or wireless link). Since Mr. Bachmann did in fact perform certain "services" from his lap top while physically present at Intouch, it is reasonable to conclude that he had and has the capability of performing such services remotely from any location.

Also, upon information and belief, Mr. Bachmann used a portable lap top computer to "provide services," some of which may have occurred outside the state of California and New Jersey (*e.g.*, while on location at an out-of-state client).

Dated:   Newark, New Jersey

June 9, 2008

_____
Katie A. Gummer, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102

87286

8

# EXHIBIT D

Katie A. Gummer, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
(973) 622-4444
KG-1349

Kenneth E. Keller (CSBN 71450) (admitted *pro hac vice*)
Anne E. Kearns (CSBN 183336) (admitted *pro hac vice*)
Krieg, Keller, Sloan, Reilley & Roman, LLP
114 Sansome Street
Fourth Floor
San Francisco, CA 94114
(415) 249-8330

Attorneys for Defendant
Intouch Group, Inc.

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| BACHMANN SOFTWARE & SERVICES, LLC<br><br>Plaintiff,<br><br>v.<br><br>INTOUCH GROUP, INC.,<br><br>Defendant. | Civil Action No. 2025-08 (KSH)<br><br>**DEFENDANT'S RESPONSES TO DEMAND FOR PRODUCTION OF DOCUMENTS (JURISDICTIONAL)**<br><br>**[EXHIBIT A IS DESIGNATED "HIGHLY CONFIDENTIAL – ATTORNEY'S EYE'S ONLY"]** |

To:   Nomi I. Lowry, Esq.
      Scarinci & Hollenbeck, LLC
      1100 Valley Brook Avenue
      P. O. Box  790
      Lyndhurst, New Jersey  07071-0790
      Attorneys for Plaintiff

Pursuant to Rules 34 of the Federal Rules of Civil Procedure, and the Court's Order on Informal Application, Defendant Intouch Group, Inc. ("Intouch"), by and through its attorneys, hereby responds to the Demand for Production of Documents (Jurisdictional) of Plaintiff Bachmann Software & Services, LLC ("Bachmann"), on its behalf only, as follows:

## GENERAL OBJECTIONS

The following objections apply to each and every Request contained in the Demand for Production of Documents (Jurisdictional) of Plaintiff Bachmann Software & Services, LLC (the "Requests"):

A.      Intouch objects to each and every instruction, definition, and Request to the extent that they purport to impose upon Intouch any requirement of discovery obligation other than as set forth in the Federal Rules of Civil Procedure and any applicable Local Rule of this Court.

B.      Intouch objects to Bachmann's definition of "document" in the "DEFINITIONS" portion of the Requests to the extent that such definition attempts to impose upon Intouch any duty of response, identification, and/or production beyond that called for by the Federal Rules of Civil Procedure and Evidence.

## RESPONSES TO DEMAND FOR PRODUCTION OF DOCUMENTS

Request No. 1

All communications, including e-communications, between the parties relating in any manner to the services performed under the subject Development Agreement.

Response to No. 1

Pursuant to the parties' agreement, Bachmann has agreed to withdraw this Request and Intouch is not required to produce documents in response to this Request.

<u>Request No. 2</u>

All iterations of the subject Development Agreement, including any transmittal correspondence.

<u>Response to No. 2</u>

Pursuant to the parties' agreement, Bachmann has agreed to withdraw this Request and Intouch is not required to produce documents in response to this Request.

<u>Request No. 3</u>

All documents evidencing payments made by Intouch to Bachmann under the subject Agreement, including any transmittal correspondence.

<u>Response to No. 3</u>

Intouch objects that this request and the term "evidencing" is overly broad and seeks confidential information that is not relevant or reasonably likely to lead to the discovery of admissible evidence.  Intouch will reasonably limit the request so that the term "all documents evidencing payments" will mean copies of checks.

Without waiving and subject to these objections, Intouch will produce responsive and non-privileged documents in its possession, custody and/or control that it can reasonably and diligently locate.

<u>Request No. 4</u>

All communications, including e-communications, between Intouch and any third party relating in any manner to the services performed by Bachmann under the subject Agreement.

<u>Response to No. 4</u>

Pursuant to the parties' agreement, Intouch is, in lieu of producing documents, providing a list of third party companies and their general location to whom Intouch showed the *iBrowz*

3

applications to, and/or had substantive conversations with, to the extent such information can be located with reasonable diligence, and so long as a confidentiality agreement is in place. The list is attached hereto as Exhibit A and has been designated "HIGHLY CONFIDENTIAL – ATTORNEY'S EYE'S ONLY."

Much of the *iBrowz* application that was ultimately either shown to or substantively discussed with third parties differed substantially from what Bachmann provided to Intouch. The services and "products" (*e.g.,* source code) provided by Bachmann to Intouch were incomplete, inadequate, dysfunctional, faulty and/or contained numerous bugs that required Intouch to fix and substantially overhaul, to the great expense and detriment of Intouch. In fact, due to the *iBrowz* software crashing and failing to perform on nearly every demonstration, Intouch had to stop demonstrating the application itself, and could only provide screen-shots of the application through a PowerPoint presentation. Thus, the highly confidential list that Intouch is providing herein (Exhibit A) is necessarily overly-broad as it includes versions of *iBrowz* (or snapshots) that Intouch showed or discussed with third parties in which Bachmann's faulty or incomplete "work" had been fixed, overhauled, over-written and/or re-written.

Request No. 5

All documents evidencing the work and home addresses of any individual(s) working for Intouch (as an employee or independent contractor) on the subject project who resides or works outside of the State of California.

Response to No. 5

Pursuant to the parties' agreement, Intouch is, in lieu of producing documents, producing a list of names and address of any individual, if any, who worked for Intouch on the "subject

4

project" who resides or works outside of California, to the extent such information can be located with reasonable diligence, and so long as a confidentiality agreement is in place.

Intouch responds that no such persons exist.

Dated: Newark, New Jersey

     June 9, 2008

                                         Katie A. Gummer, Esq.
                                         McCarter & English, LLP
                                       Four Gateway Center
                                       100 Mulberry Street
                                       Newark, New Jersey  07102

Wells Fargo

1 of 2

## View Check Copy

| Check Number | Date Posted | Check Amount | Account Number |
|---|---|---|---|
| 0000000008814 | 12/12/07 | $21,000.00 | Intouch MAIN checking account XXX-XXX2844 |

REDACTED

**INTOUCH GROUP, INC.**
16412 GARCIA STREET
BERKELEY, CA 94710-1521
(510) 704-7076



PAY TO THE
ORDER OF
Bachrach Software and Services, LLC

Twenty-One Thousand and 00/100 ................................... DOLLARS

Bachrach Software and Services, LLC
270 Sparta Avenue
Suite 104-318
Sparta, NJ 07871

Wells Fargo Bank, N.A.
11-4366-7710

12/6/2007

$ **21,000.00**

6814

MEMO

Sparta 7 Invoice

REDACTED

REDACTED

Wells Fargo View Check Copy

REDACTED

Equal Housing Lender

© 1995 - 2008 Wells Fargo. All rights reserved.

**YAHOO!** MAIL

Print - Close Window

**Date:** Thu,6 Dec 2007 19:53:14 -0800 (PST)

**From:** "Patty MacLeod" <patty@intouchgroup.com>

**Subject:** Sprint 7 payment

**To:** "Glenn Bachmann" <glenn@bachmannsoftware.com>


REDACTED

Hi Glenn,

I'm mailing subject check tonight.

See you Monday,

Patty MacLeod
intouch group, inc.

# EXHIBIT A
## TO DEFENDANT'S RESPONSES TO DEMAND FOR PRODUCTION OF DOCUMENTS (JURISDICTIONAL) NUMBER 4

**EXHIBIT A TO DEFENDANT'S RESPONSES TO DEMAND FOR PRODUCTION OF
DOCUMENTS (JURISDICTIONAL)**

In response to Document Request Number 4, and pursuant to the agreement of the
parties, in lieu of producing documents, Intouch is providing the following list of the general
location of third party companies (name redacted) to whom Intouch showed the *iBrowz*
applications to, and/or had substantive conversations with, to the extent such information can be
located with reasonable diligence.

As set forth in its responses, this list is necessarily overly broad since it includes versions
of *iBrowz* (or snap shots) that Intouch showed or discussed with third parties that Intouch was
required to fix, overhaul, overwrite and/or re-write due to Bachmann's incomplete, inadequate,
faulty, and/or bug-laden work.

Mountain View, CA
Emeryville, CA
Mountain View, CA
Los Angeles, CA
Los Angeles, CA
Emeryville, CA
Mexico City
Mexico
Milpitas, CA 95035
India
Emeryville, CA
Los Angeles, CA 90024
Sunnyvale, CA
Sunnyvale, CA 94089
Menlo Park., CA
Menlo Park, CA
Menlo Park, CA 94025
Los Angeles, CA
Folsom, CA
Menlo park, CA
California
Walnut Creek, CA
Los Angeles, CA

In addition, Intouch discussed *iBrowz* with and/or provided a PowerPoint of *iBrowz* to several
potential individual investors, all of whom, except as indicated below, are located in California.

Intouch provided a PowerPoint of *iBrowz* to two investors who are located in New York.
Intouch also had phone conversations with two venture capitalists in Boston.