**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

| | | |
|---|---|---|
| | : | |
| **BACHMANN SOFTWARE &** | : | |
| **SERVICES,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 08-2025(KSH)** |
| | : | |
| **INTOUCH GROUP, INC.,** | : | |
| | : | **OPINION** |
| **Defendant.** | : | |

_____

SHWARTZ, United States Magistrate Judge

This matter comes before the Court on the motion of defendant Intouch Group, Inc., to dismiss this action for lack of jurisdiction, or in the alternative to transfer for want of jurisdiction or for convenience to the Northern District of California. The Honorable Katharine S. Hayden referred these motions to the Undersigned for a Report and Recommendation. The Court addressed these motions without oral argument pursuant to Fed. R. Civ. P. 78 and Local Civ. R. 78.1. For the reasons set forth below, the Undersigned recommends that the United States District Judge deny the motions.

<u>FACTS</u>

Bachmann Software & Services, LLC ("Plaintiff") is a New Jersey Corporation that maintains its principal place of business in Sparta, New Jersey. Bachmann Cert. at ¶ 2. Glenn Bachmann ("Bachmann") is plaintiff's primary developer and project liaison and resides in New Jersey. Kearns Aff. at Ex. A. Defendant Intouch Group, Inc. ("Defendant" or "Intouch") is a

1

California corporation, with its principal place of business in Berkeley, California.  Affidavit of Joshua Kaplan ("Kaplan Aff."), dated June 26, 2008 at ¶ 2.

Defendant is the designer and developer of the Intouch iBrowz System ("iBrowz"), a mobile phone software application that allows users to browse the internet from their mobile phones.  Id.  On December 22, 2006, Bachmann saw a message posted on an internet developer forum stating that Joe Schlessinger, Director of Technical Product Management of Intouch, sought software developers to work on the iBrowz project.  Certification of Glenn Bachmann ("Bachmann Cert."), dated July 9, 2008, at ¶ 3; Affidavit of Anne Kearns ("Kearns Aff."), dated June 26, 2008, at Ex. A.  Bachmann responded to the message, contacting Mr. Schlessinger in California.  Bachmann Cert. at ¶ 4.  On January 23, 2007, Bachmann drafted a proposal for his work on iBrowz, which he submitted to Mr. Schlessinger along with the plaintiff's standard development agreement.  Id.  On January 29, 2007, Mr. Bachmann flew to California to meet with Mr. Schlessinger and discuss this initial proposal.  Id. at 5.

The parties signed an initial development agreement on March 8, 2007.  Bachmann Cert. at ¶ 7; Kaplan Aff. at ¶ 5.  The agreement provided that plaintiff would be compensated at a set price for tasks defined in a "Statement of Work," which was attached as Exhibit A to the initial development agreement.  Bachmann Cert. at ¶ 7; Kaplan Aff. at Ex. A; Kearns Aff. at Ex. A.  The agreement stated that California law governed the contract.[1]  See Kaplan Aff. at Ex A.

At various times, the defendant requested that plaintiff perform services that were outside the scope of tasks defined in the initial agreement.  Bachmann Cert. at ¶ 10.  As a result, on April

---

[1] The language of the contract reads: "Governing Law: This Agreement shall be governed by, and construed in accordance with, the laws of the State of California without reference to the law of conflicts of laws thereof." Kaplan Aff. at Ex. A.

2

27, 2007, the parties signed an amendment to the initial agreement.  Bachmann Cert. at ¶ 11; <u>see</u> <u>also</u> Kaplan Aff. at Ex. B.  According to the amendment, the plaintiff performed additional tasks for which he was compensated at an hourly rate.  Bachmann Cert. at ¶ 11, 13; Kaplan Aff. at Ex. A, B; Kearns Aff. at Ex. A.

Beginning in July, 2007, the parties discussed restructuring the way plaintiff would provide his services.  Kaplan Aff. at ¶ 7.  According to the defendant, the restructuring was necessary to more closely manage plaintiff's services after plaintiff missed deadlines that caused the defendant to miss its initial iBrowz launch date in June, 2007.  <u>Id.</u>

Plaintiff traveled to defendant's offices in California in July, 2007.  Bachmann Cert. at ¶ 19; Kaplan Aff. at ¶ 13; Affidavit of Patty McLeod ("McLeod Aff."), dated June 26, 2008, at Ex. A.  During the visit, the parties discussed having the plaintiff make monthly trips to California so he could attend meetings and provide on-site services.  McLeod Aff. at Ex. A.  At that time, plaintiff was also given a check for his past services.  Bachmann Cert. at ¶ 21; Kaplan Aff. at ¶ 14. During the subsequent three visits, in August and September, the parties continued to negotiate the terms of a new agreement and further defined the scope of work needed.  Kaplan Aff. at ¶ 16. These discussions culminated in a new agreement in October, 2007.  <u>Id.</u> at ¶ 14.

On October 24, 2007, plaintiff again visited California.  Bachmann Cert. at ¶ 15.  During this visit, plaintiff received payment for past services, Bachmann Cert. at. ¶ 21; Kaplan Aff. at ¶ 17, and the parties engaged in the final negotiations for the new agreement. Bachmann Cert. at ¶ 15; Kaplan Aff. at ¶¶ 10, 17.  This new agreement ("October 24, 2007 agreement") is the subject of this litigation.  The agreement provided for "sprints," a series of mini-projects designed to be completed over a short period of time.  Kaplan Aff. at ¶¶ 7, 8; Kearns Aff. at Ex. A.  Under the

agreement, plaintiff would complete a sprint and submit it to the defendant and plaintiff would be paid when the defendant accepted it.  Kaplan Aff. at Ex. C.  Plaintiff received the signed copy of the new agreement on October 25, 2007 upon returning to New Jersey.  Bachmann Cert. at ¶ 15.

Throughout the course of the parties' relationship, the parties were in regular communication, exchanging more than five thousand e-mails.  Bachmann Cert. at ¶ 17.  In connection with the October 24, 2007 agreement alone, the parties exchanged fifteen hundred emails.  Id.  Additionally, plaintiff visited defendant's offices a total of seven times for the purposes of project planning and attending status meetings.[2]  Bachmann Cert. at ¶ 17, Ex. A; Kaplan Aff. at ¶ 15.  Pursuant to the agreements, programming was among the services to be performed while plaintiff was  in California,  Kaplan Aff. at ¶ 15, and, indeed, plaintiff performed such tasks during these trips to California.  See Kearns Aff. at Ex. B.

Pursuant to the initial March 8, 2007 Agreement and the October 24, 2007 Agreement, defendant made eleven payments to plaintiff for its services.  Bachmann Cert. at ¶ 21.  Other than the two payments personally delivered to plaintiff while Mr. Bachmann was in California, all other payments were mailed to the plaintiff in New Jersey and were deposited in New Jersey banks.  Bachmann Cert at ¶ 21.  Plaintiff contends that defendant failed to pay plaintiff for its work on sprints 8, 9, and 10 in the amount of $59,000 and it is those missed payments that form the basis of this Complaint.  Bachmann Cert. at ¶ 22; Kaplan Aff. at ¶ 24.  Defendant contends

---

[2]Both parties concede that plaintiff was in California on seven separate occasions.  These visits took place on or about July 17-18, August 8-9, September 10-11, September 27-28, October 23-24, November 19-20 and December 10-11, 2007.  Bachmann Cert. at ¶ 19; Kaplan Aff. at ¶¶ 14, 16-18.  Plaintiff alleges, however, that he was only in California on business relating to the Agreement at issue on November 19-20 and December 10-11, 2007.  Bachmann Cert. at ¶ 19.

that it did not accept these sprints because they had faults, but it attempted to resolve this issue by offering to pay the plaintiff an additional $35,000 when all code was delivered bug-free.  Kaplan Aff. at ¶ 24.  Bachmann rejected this offer.  Id.

On March 14, 2008, the plaintiff filed a Complaint in the New Jersey Superior Court alleging that the defendant violated the New Agreement,[3] seeking damages, punitive damages, costs, interest and attorneys fees based upon various common law theories, and seeking injunctive relief enjoining the defendant from using the software and source code plaintiff provided.  Kearns Aff. at Ex. C.  On April 25, 2008, defendant removed the Complaint to federal court.  Docket Entry No. 1.

As a result of the defendant's May 9, 2008 letter requesting leave to file a motion to dismiss, this Court convened a teleconference and entered an order allowing the parties to engage in  jurisdictional discovery and setting a briefing schedule.  On June 26, 2008, the Court granted defendant's request to extend the time to file its motion to dismiss.  On June 27, 2008, the defendant moved to dismiss the case for lack of personal jurisdiction, or in the alternative, to transfer the case to California for: (1) lack of jurisdiction or (2) convenience of the parties and witnesses.  The plaintiff filed opposition to this motion on July 9, 2008, to which plaintiff filed a reply on July 14, 2008.

<u>SUMMARY OF ARGUMENTS</u>

The defendant argues that this case should be dismissed for lack of general jurisdiction

---

[3]The Complaint alleged nine separate counts of action: (1) breach of contract; (2) conversion; (3) unjust enrichment; (4) equitable fraud; (5) declaratory judgment and injunctive relief; (6) promissory estoppel/detrimental reliance; (7) book account; (8) quantum meruit; and (9) breach of good faith and fair dealing.

5

over the defendant because the defendant: (1) is not incorporated in New Jersey; (2) is not qualified to do business there; (3) has no subsidiaries incorporated or qualified to do business in New Jersey; (4) does not regularly conduct business in New Jersey or receive revenue from it; (5) does not advertise its services specifically in New Jersey; and (6) none of defendant's employees, officers, or directors are domiciled in New Jersey.

The defendant argues that this case should be dismissed for lack of specific jurisdiction over the defendants because: (1) the unilateral activity of a plaintiff who claims some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state; (2) defendant did not purposefully avail itself of the privilege of conducting activities within New Jersey to invoke its benefits or protections; (3) defendant did not specifically solicit a developer in New Jersey; (4) nothing in the Agreements required the defendant to perform any services in New Jersey and performance of services in New Jersey should be of no consequence here; (5) the Agreements required plaintiff to perform services in California; and (6) the events giving rise to the claims all occurred in California.  The defendant further argues that an assertion of jurisdiction over the defendant would not comport with the notions of fair play and substantial justice because: (1) the burden on the defendant to litigate in New Jersey would be substantial, and (2) California has a greater interest in litigating the dispute than does New Jersey.

Alternatively, the defendant argues that this case should be transferred to the Northern District of California.  Defendant alleges that the private and public factors weigh in favor of transferring this case because: (1) the defendant is domiciled in California and thus prefers to litigate the action there; (2) California has personal jurisdiction over the plaintiff because he visited California on several occasions and performed his obligations pursuant to the Agreements

in California; (3) the conduct complained of occurred in California; (4) the plaintiff will not be physically or financially impaired by litigating in California; (5) the majority of the witnesses are located in California; (6) judgment against defendant will be easier to enforce in California where all of defendant's assets are located; (7) trial in California will be more expeditious and cost effective; and (8) the courts in California are more familiar with the law governing this dispute.

In response, the plaintiff argues that this Court has general jurisdiction over the defendant because: (1) physical presence is not determinative of personal jurisdiction; (2) the e-communications between the parties were constant and voluminous; (3) the e-communications sent to plaintiff in New Jersey were purposeful communications in furtherance of their business relationship; (4) the parties had a long-term business relationship, beginning in late 2006 and continuing through 2008; and (5) defendant had significant contacts with New Jersey as shown by the contract payments it sent to New Jersey.

Additionally, the plaintiff argues that specific jurisdiction over the defendant is proper because: (1) defendant knew that plaintiff was a New Jersey corporation and that communications would be flowing in and out of that state; (2) defendant understood that the plaintiff would be performing the required services in the state of New Jersey; (3) defendant's breach of contract occurred when defendant failed to provide plaintiff payment in New Jersey; and (4) due to defendant's failure to pay plaintiff, plaintiff retains ownership of the source code, thus the defendant has converted the property of a New Jersey Corporation.

The plaintiff further argues that the defendant has not met its burden of proving that jurisdiction in New Jersey does not comport with the notions of fair play and substantial justice because: (1) there is no substantial burden on the defendant, and (2) based on defendant's

7

interactions with the forum state, New Jersey has a strong interest in protecting its residents from those who contract therein.  The plaintiff also notes that there is no forum selection clause in the Agreements.

Additionally, plaintiffs argue that transferring this case to the Northern District of California on grounds of convenience is not warranted given the defendant's substantial connection with New Jersey.  Plaintiff states that this connection is evident because: (1) all communications and notices defendant was to be provide to plaintiff were to be sent to New Jersey; (2) all but two payments were made to plaintiff in New Jersey; (3) payments were all deposited in banks in New Jersey; and (4) constant communications occurred while plaintiff was in New Jersey and defendant was in California, including more than five thousand e-communications.  Plaintiff further argues that New Jersey serves as a convenient forum for the parties because: (1) a showing of convenience to the plaintiff who sues in its home forum will generally outweigh the inconvenience to defendant; (2) New Jersey routinely applies the law of foreign jurisdictions; (3) the relevant books, records and code are all located in New Jersey; (4) plaintiff's employees are all located in New Jersey, and (5) defendant has the means to travel to New Jersey.  Lastly, plaintiff mentions that the defendant has failed to provide an affidavit identifying the witnesses that would allow this Court to assess the inconvenience of the chosen forum to such witnesses.

In reply, the defendant argues that the plaintiff has failed to meet its burden of proof showing the defendant has sufficient minimum contacts because the plaintiff: (1) incorrectly places too much emphasis on the communications between parties in an attempt to establish jurisdiction; (2) plaintiff establishes no significant factors which confer jurisdiction; (3)

incorrectly asserts that defendant was required to make payment directly into a New Jersey bank; (4) attempts to establish a conversion claim which fails as tenuous because any alleged conversion took place in California; (5) incorrectly asserts that the parties contemplated performance in New Jersey; (6) bases its argument upon cases that can be readily distinguished from the present case; (7) the solicitation, negotiation and execution of the contract did not transpire exclusively in New Jersey; and (8) the Agreements are governed under California law.  Further, the defendant argues that the burden on it of litigating in New Jersey would be greater than the burden on plaintiff to litigate in California.

Additionally, defendant argues that transfer to California is appropriate because: (1) the Northern District of California is the only forum that has any legitimate interest in the matter; (2) requiring defendant to litigate in New Jersey would be oppressive and vexatious because all relevant source code, books and records are in California; (3) the parties expected that if any litigation were to occur, California law would govern; and (4) while plaintiff asserts that defendant did not disclose its witnesses, the Court is able to assess the materiality of the witnesses from the affidavits the defendant provided.

<u>DISCUSSION</u>

Rule 4(e) of the Federal Rules of Civil Procedure provides that a federal court may exercise jurisdiction over a non-resident defendant to the extent authorized by state law within that forum.  <u>Remick v. Manfredy</u>, 238 F.3d 248, 255 (3d Cir. 2000); <u>Pennzoil Prod. Co. v. Colelli & Assocs., Inc.</u>, 149 F.3d 197, 200 (3d Cir. 1998).  New Jersey's long-arm rule extends jurisdiction over non-resident defendants to the full extent permitted by the United States Constitution.  <u>Carteret Sav. Bank, F.A. v. Shushan</u>, 954 F.2d 141, 145 (3d Cir. 1992).  Personal

jurisdiction under the Due Process Clause of the Constitution requires proof of a "relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977); IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).

Once a defendant moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff has the burden of presenting competent evidence demonstrating that the moving defendant had sufficient contacts with the forum to justify the Court's assertion of either general or specific personal jurisdiction. See BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000) (citing Stranahan Gear Co. v. NL Indus., Inc., 800 F.2d 53, 58 (3d Cir. 1986)). In considering a Rule 12(b)(2) motion, the Court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002) (citing Mellon Bank (East) PSFS Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) and Carteret Savings, 954 F.2d at 142 n.1).

The plaintiff's standard of proof varies depending upon the nature of the evidence presented to the Court for its consideration. Wright & Miller, Federal Practice and Procedure: Civil 2d § 1351 at 248 n. 27 (3d Ed. 2008). The Court may proceed either based upon affidavits and sworn documents or conduct an evidentiary hearing. The type of proof is left to the Court's discretion. See Gibbs v. Buck, 307 U.S. 66, 71-72 (1939). Where no evidentiary hearing has taken place, the plaintiff must make out a prima facie case. See Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004); LaRose v. Sponco Mfg. Inc., 712 F. Supp. 455, 458 n.2. (D.N.J. 1989). If the Court conducts an evidentiary hearing, then plaintiff is put to the higher burden of proving that personal jurisdiction is proper by a preponderance of the evidence. See id. (citing Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977)).

10

All parties have submitted affidavits and certifications and no party has requested an evidentiary hearing.  Thus, in this case, the plaintiff must make a prima facie showing of personal jurisdiction and, in determining if it has met this burden, the Court must consider the pleadings and affidavits in a light most favorable to the plaintiff and any discrepancies must be resolved in its favor.  Lawn Doctor, Inc. v. Branon, Criv. No. 07-4735, 2008 WL 2064477, * 3 (D.N.J. May 14, 2008); LaRose, 712 F. Supp. at 458; see also Wright v. Xerox Corp., 882 F. Supp. 399, 403 (D.N.J. 1995) (citing Carteret Savings, 954 F.2d at 142 n.1).

      A.     General Personal Jurisdiction

      General personal jurisdiction exists when the evidence shows that the defendant's contacts with the forum, whether or not related to the litigation, are "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).  Put differently, the plaintiff must show that "the defendant has purposefully directed its activities toward residents of the forum state or otherwise purposefully availed itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws."[4] IMO Indus., 155 F.3d at 259 (internal quotation marks and citations omitted).  If continuous and systematic contacts with the forum state are shown, then personal jurisdiction is proper even if the cause of action arises from nonforum contacts.  Dollar Sav. Bank v. First Sec. Bank of Utah, N.A., 746 F.2d 208, 211 (3d Cir. 1984); see also Remick, 238 F.3d at 255.

_____

     [4]General jurisdiction, for example, requires that a foreign defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general jurisdiction.  See Wright & Miller, Federal Practice and Procedure: Civil 3d § 1067.5 (3d Ed. 2008).

Here, it is undisputed that the defendant is incorporated in California, with its principal place of business in Berkeley, California.  Kaplan Aff. at ¶ 1.  Defendant has never advertised itself or its services in any publication directed specifically at New Jersey.  Id. at ¶ 3.  Moreover, the defendant does not maintain any offices or employees in New Jersey, and does not regularly transact business in New Jersey.  Id.  Defendant has never done business with any other third party in New Jersey, nor is it incorporated or qualified to do business there.  Id. at ¶ 4.  None of its officers, directors, or employees reside or are domiciled in New Jersey.  Id.  Defendant also has no branch office or comparable facilities in New Jersey, and has no telephone listings, mailing addresses, bank accounts or other tangible personal or real property in New Jersey.  Id.  In fact, the only transactions in New Jersey about which there is evidence in the record are those between plaintiff and defendant.

Moreover, plaintiff does not explicitly argue that general jurisdiction exists over the defendant. Instead, plaintiff argues that the defendant's communication with the plaintiff amounts to systematic and continuous contacts because these contacts totaled over five thousand e-mail communications with the plaintiff while he was in New Jersey.  Bachmann Cert. at ¶ 17. Telephone calls and mail directed to one entity in the forum state alone, however, is not sufficient to establish general jurisdiction.  Davis v. PNGI Charles Town Gaming, LLC, Civ. No. 07-2352, 2007 WL 4553695, *5 (E.D.Pa. Dec. 26, 2007) (holding that direct mail and telephone solicitation is insufficient to confer general personal jurisdiction over defendant); see also Barrett v. The Catacombs Press, 44 F. Supp. 2d 717 (E.D.Pa. 1999)); see also Clark Capital Management Group, Inc. v. Navigator Investments, LLC, Civ. No. 06-2334, 2006 WL 2707392, *5 (E.D.Pa. Sept. 19, 2006) (stating that "telephone communication or mail sent by a defendant [do] not trigger

12

personal jurisdiction if they do not show purposeful availment" (citing Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455 (3d Cir. 2003)).  Though the plaintiff responded to a message defendant posted on the internet seeking software developers, there is no evidence in the record that indicates that this posting was directed specifically towards New Jersey or New Jersey developers and the plaintiff has not asserted that the message was posted on a forum with a New Jersey based audience.  Bachmann Cert. at ¶ 3.

In short, there is no evidence that the defendant directed its activities into New Jersey for any reason other than because the New Jersey plaintiff responded to defendant's internet posting and the parties then commenced a relationship.  Thus, the defendant's only contacts with New Jersey, namely its communications with plaintiff while he was in New Jersey for the purpose of performing certain agreements, is insufficient to give rise to general jurisdiction over it.

The Court next determines whether the defendant's contacts with this forum are sufficient to confer specific personal jurisdiction.

B.     Specific Personal Jurisdiction

Specific personal jurisdiction exists when the relationship among the defendant, cause of action, and forum are such that a defendant should reasonably anticipate being haled into court there.  Machulsky v. Hall, 210 F. Supp. 2d 531, 539 (D.N.J. 2002) (citations omitted).  As the Honorable Michael Chagares, speaking for the Court of Appeals for the Third Circuit, stated:

> [d]etermining whether specific jurisdiction exists involves a three-part inquiry.  First, the defendant must have purposefully directed his activities at the forum.[5]  Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities.

---

[5] There is sufficient due process contact for specific personal jurisdiction if the defendant, for example, has purposefully directed its activities at residents of the forum.  Henry Heide, Inc. v. WRH Products. Co., 766 F.2d 105, 108 (3d Cir. 1985).

> Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice. Because this analysis depends on the relationship between the claims and contacts, we generally evaluate specific jurisdiction on a claim-by-claim basis.

Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007) (internal quotations marks and citations omitted). To determine whether specific personal jurisdiction exists, the Court must examine the "quality and nature of the defendant's activity," Hanson v. Denckla, 357 U.S. 235, 253 (1958), which includes consideration of whether the actions that were directed at the forum and whether the particular claim arose from that activity. In conducting this examination, the Court must be mindful of the type of cause of action alleged. Here, the plaintiff alleges nine separate causes of action that arise from the defendant's alleged failure to pay plaintiff for work on sprints 8, 9 and 10 as required by the October 24, 2007 Agreement namely: (1) breach of contract; (2) conversion; (3) unjust enrichment; (4) equitable fraud; (5) declaratory judgment and injunctive relief; (6) promissory estoppel/detrimental reliance; (7) book account; (8) quantum meruit; and (9) breach of good faith and fair dealing.

    1. Mimimum Contacts/Purposeful Availment

To find a defendant has minimum contacts with a forum state requires a determination that "the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protection of its laws." Hanson, 357 U.S. at 253. Thus, "[a] single, unsolicited contact, random or fortuitous acts or the unilateral acts of others (including the plaintiff) do not constitute a purposeful connection between the defendant and the forum state." Osteotech v. Gensci Regeneration Sciences, Inc., 6 F.Supp. 2d 52, 56 (D.N.J.1998) (citing Burger King, 471 U.S. at 476). Thus, telephone communication or mail sent by a defendant into a forum state do not trigger personal jurisdiction in that state if the actions "do not show purposeful

availment." Mellon Bank, 983 F.2d at 556; Barrett v. The Catacombs Press, 44 F.Supp. 2d 717 (E.D.Pa. 1999).

In this Circuit, "'there are different considerations in analyzing jurisdiction over contract claims and over certain tort claims,'" Miller Yacht Sales, 384 F.3d at 99 (citing Remick, 238 F.3d at 255-56), and "[i]n contract claims we analyze the totality of the circumstances surrounding a contract to determine whether the exercise of jurisdiction over the defendant is proper." Id. This totality of the circumstances test is not the equivalent of a requirement that the defendant's contacts with the forum be the proximate cause of the plaintiff's claims. Id. Among other things, "in a contract case, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract *or its breach.*" Telcordia Tech Inc. v. Telkom SA Ltd., 458 F.3d 172, 177 (3d Cir. 2006)(emphasis in the original)(quoting General Elec. Co. v. Deutz AG, 270 F.3d 144, 150-51 (3d Cir. 2001)). Therefore, in a breach of contract case, telephonic and written communications with forum residents "can empower a court to exercise personal jurisdiction over persons outside the forum," if the defendant's actions in the forum reflect purposefully availing itself of the privilege of conducting activities in the forum. Grand Enter. Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993)(citing Carteret Sav. Bank, F.A., 954 F.2d at 147-48); see also Telecordia, 458 F.3d at 177 (stating "mail and wire communication can constitute purposeful contacts when sent into the forum."). Moreover, if the contact, creates a substantial connection with the forum, then a single act can support jurisdiction when it is connected with the injury sued upon. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 n.18 (1985).

In a tort case, sufficient minimum contacts are present when a plaintiff "can point to

contacts which demonstrate that the defendant expressly aimed its tortious conduct at the forum and thereby made the forum the focal point of the tortious activity."  IMO Indus., 155 F.3d at 265.  To determine if there is specific personal jurisdiction over intentional tort claims, the Court must apply the "effects test" that the United States Supreme Court articulated in Calder v. Jones , 465 U.S. 783 (1984).  See IMO Indus., 155 F.3d at 260; Machulsky, 210 F. Supp. 2d at 540-45; see also Carteret Savings, 954 F.2d at 147 (noting that an allegation of an intentional tort has special importance when assessing the reasonableness of an exercise of personal jurisdiction over a nonresident defendant)[6].  Calder established that, where intentional tortfeasors know that their actions will harm a plaintiff in a particular forum, and that the brunt of the injury caused by their actions will be felt in that forum, they will be subject to jurisdiction there.  Id.; Wright, 882 F. Supp. at 405; Carteret Savings, 954 F.2d at 147.  To establish personal jurisdiction under the Calder "effects" test, a plaintiff must show that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the resulting harm; and (3) the defendant expressly aimed its tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.  See IMO Indus., 155 F.3d at 265-66.[7]  Thus, if the cause of action arise out of or relates to the defendant's

_____

[6]Under certain circumstances, "the unique relations among the defendant, the forum, the intentional tort, and the plaintiff may . . . render the defendant's contacts with the forum - which otherwise would not satisfy the requirements of due process - sufficient."  IMO Indus., 155 F.3d at 265.

[7] No party mentions the Calder effects test.

forum-related activities, then particular or sporadic contacts will be sufficient to justify the exercise of specific personal jurisdiction.  See  Helicopteros, 466 U.S. at 414 & n.8; North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 (3d Cir. 1990).  Indeed, federal courts in New Jersey have, "in some circumstances, found personal jurisdiction over a defendant on the basis of a single contact having an effect in New Jersey, based on the strong interest in protecting New Jersey residents from injury due to the actions of an out-of-state defendant."  Zieper v. Reno, 111 F. Supp. 2d 489, 492 (D.N.J. 2000).

Here, the record reflects that the defendant's communications with the plaintiff in New Jersey subject it to specific personal jurisdiction in New Jersey over plaintiff's contracts claims. During the negotiations between the parties about the October 24, 2007 agreement and its performance, the defendant reached into this forum and had extensive contact with the plaintiff in New Jersey.  Bachmann Cert at ¶¶ 13-15.  There is no dispute that the parties exchanged more than one thousand five hundred electronic communications in connection with the October 24, 2007 agreement alone.  Id. at ¶ 17.  Moreover, the new agreement shows the defendant knew that the plaintiff was based in New Jersey, id., and defendant sent plaintiff an executed copy of the new agreement to New Jersey.  Bachmann Cert. at ¶ 15.  The defendant should have known that the plaintiff would be performing the work on the customized software described in the contract in New Jersey because its offices are located in New Jersey, defendant sent payments to New Jersey, plaintiff participated in teleconferences from New Jersey, and its programmer was in New Jersey.  Id. at ¶¶ 17 & 21.  Finally, the alleged breach of contract occurred when the defendant failed to pay plaintiff by forwarding payment to New Jersey.  Telcordia Tech. Inc., 458 F.3d at 178 (finding minimum contacts where "the breach of contract, i.e. the failure to pay for

contractually compliant software, occurred when the payment was not placed in a New Jersey bank . . . .").  Unlike "the isolated interaction of a supplier putting an item into the stream of commerce to be fished out by a consumer," id., these communications reflect that the defendant "'engaged in negotiations for an agreement that would have created rights and obligations among citizens of [New Jersey] ... [and that it] deliberately and personally directed significant activities towards the state,'" Fiscus, 2006 WL 1722607 at * 7 (quoting  Grand Enter. Group, Ltd., 988 F.2d at 482-83), for the purpose of obtaining a customized product.  Based on this evidence, the Court finds that the defendant has purposefully availed itself of doing business in New Jersey.

To the extent that plaintiff raises tort claims in his Complaint, specific personal jurisdiction also exists over these claims.  First, plaintiff alleges what appear to be an intentional tort claims, including conversion, see Peloro v. United States, 488 F. 3d 163, 173-74 (3d. Cir. 2007); Boccone v. Eichen Levinson, LLP, Civ. No. 04-3871, 2007 WL 77328, at *7 (D.N.J. Dec. 26, 2006) and equitable fraud.  See Moneygram Payment Systems, Inc. v. Consorcio Oriental, S.A., Civ. No. 01-4386, 2003 WL 21186124, at *6 (3d Cir. 2003) (finding that allegations of fraud may support in personam jurisdiction where defendant committed an intentional tort).  Second, plaintiff felt the brunt of the harm from defendant's conduct in New Jersey.  Like the plaintiff in Remick, "because the beneficiary of a contract resided and worked in [New Jersey], 'the effects of any intentional conduct by the defendants designed to interfere with . . . contractual relations . . . necessarily would have been felt in [New Jersey].'" Wellness Publishing v. Barefoot, Civ. No. 03-3919, 2005 WL 852685, * 3 (3d Cir. April 14, 2005)(citing Remick v. Manfredy, 238 F.3d 248, 260 (3d Cir. 2001)); Lawn Doctor, 2008 WL 2064477 at *5.  Lastly, the record shows that the defendant expressly aimed its conduct at New Jersey by negotiating the new

agreement with a New Jersey resident, sending communications to New Jersey, sending a signed copy of the new agreement to New Jersey, engaging in numerous communications while plaintiff performed services for defendant's benefit in New Jersey, accepting source code created in New Jersey, and failing to make payment as promised to the plaintiff in New Jersey.  Bachmann Cert. at ¶ 21.  Thus, in totality, the record indicates that the defendant expressly aimed its alleged tortious conduct into New Jersey.  See Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1087 (3d Cir. 2000)(stating that the expressly aiming "requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."); see also Lawn Doctor, 2008 WL 2064477 at *5 . Thus, to the extent that the plaintiff's alleges tort claims, the Court can properly assert specific jurisdiction over the defendant for those claims.

The fact that the defendant's representatives did not physically enter New Jersey during the negotiations and the fact that the plaintiff could have performed the work outside of New Jersey does not preclude this Court from finding specific personal jurisdiction.  Fiscus v. Combus Finance AG, Civ. No. 03-1328, 2006 WL 1722607, *4-5 (D.N.J. June 20, 2006) (stating that physical presence within the forum state is not required to establish personal jurisdiction over a non-resident defendant.) (citing Burger King, 471 U.S. at 476).  Indeed, the United States Supreme Court held that

> Jurisdiction . . . may not be avoided merely because the defendant did not physically enter the forum State.  Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable forseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have

> consistently rejected the notion that an absence of physical contacts can defeat
> jurisdiction there.

Burger King, 471 U.S. at 476 (internal citations omitted).   As such, the lack of a physical

presence in New Jersey does not immunize the defendant from specific personal jurisdiction.

Indeed, courts in this Circuit have consistently found specific personal jurisdiction in cases,

where, as here, the defendants have directed communications into a forum for the purpose of

doing business but have refrained from physically entering that forum.  See Grand Enter. Group,

Ltd. , 988 F.2d at 478;  Kultur Int'l Films, Ltd. v. Covenant Gordon Pioneer, FSP., Ltd., 860

F.Supp. 1055 (D.N.J. 1994); Fiscus, 2006 WL 1722607, at *6.  Here, the defendant's acts show

that it has purposefully availed itself of doing business in New Jersey by contracting with a New

Jersey resident and engaging in extensive communications with the New Jersey plaintiff to further

its agreement, and is subject to specific personal jurisdiction as to the claims arising from those

acts.

   2. The Claim Arises From Defendant's Contacts

Here, it is undisputed that plaintiff's claims arise from the defendant's contacts with this

forum.  Indeed, the contract that was allegedly breached was consummated through documents

and communications the defendant sent into this forum, Bachmann Cert. at ¶ 15, and involves

work plaintiff performed and for which payment was not received in New Jersey.  Bachmann

Cert. at ¶ 20.  As such,  the claims in this case relate to the defendant's contact with this forum.

   3. Fair Play and Substantial Justice

In addition to demonstrating that the defendant has sufficient minimum contacts with New

Jersey, this Court must determine whether the exercise of jurisdiction over the defendant

"'accords with the notions of 'fair play and substantial justice.'" Fiscus, 2006 WL 1722607, at *8

(quoting Mesalic v. Fiberfloat Corp., 897 F.2d 696, 701 (3d Cir.1990)).  "The burden on a

defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."

Grand Enter. Group, Ltd., 988 F.2d at 483.  The existence of minimum contacts makes

jurisdiction presumptively constitutional, and the defendant "must present a compelling case that

the presence of some other considerations would render jurisdiction unreasonable."  O'Connor v.

Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 324 (3d Cir. 2007) (citing Burger King, 471 U.S. at

477).  To determine "whether the assertion of jurisdiction violates traditional notions of fair play

and substantial justice, the court must consider several factors: the burden on the defendant, the

interests of the forum state, plaintiff's interest in obtaining relief, the interstate judicial system's

interest in obtaining efficient resolution of controversies, and, if relevant, the shared interest of the

several states in furthering substantive social policies."  XL Specialty Ins. Co. v. Westmoreland

Coal Co., Civ. No. 06-1234, 2006 WL 1783962, *10 (D.N.J. June 26, 2006) (citing Asahi, 480

U.S. at 113); see also Fiscus, 2006 WL 1722607, at *8.

        Here, the record indicates that assertion of jurisdiction over the defendant comports with

fair play and substantial justice.  First, the defendant has not met its burden of showing that

litigating this case in New Jersey would present an unreasonable burden.  Mellon Bank, 960 F.2d

at 1227 (stating that defendants bear the burden of showing that jurisdiction is unreasonable.)

Indeed, the defendant does not even argue that litigating this case in New Jersey would present an

unreasonable burden.  Although defendant notes in its submission that its witnesses are in

California, it does not identify the witnesses, their proffered testimony, or whether or not they

would oppose travel to New Jersey.  Second, New Jersey has an interest in protecting its residents

from breaches of contracts that were partly negotiated and performed in New Jersey.  Bachmann

Cert. at ¶ 15.  The record shows that although the finished source code was implemented in

California, the plaintiff made the product in New Jersey.  See Bachman Cert. at ¶ 20.  Third,

although the defendant maintains offices in California, the underlying claim arises from a contract

between residents of California and New Jersey, performed, in part, by sending communications

into New Jersey.  Fourth, as to plaintiff's ability to obtain relief, it is clear from the record that

plaintiff has a strong interest in obtaining relief in its home state as it feels the financial impact of

defendant's alleged non-payment here.  See CDI Intern., Inc. v. Marck, Civ. No. 04-4837, 2005

WL 146890, * 4 (E.D.Pa. Jan. 21, 2005).  As such, the Court concludes that exercising personal

jurisdiction over the defendant would comport with the notion of fair play and substantial justice.

No factor shows that an exercise of jurisdiction would be unfair or unreasonable.   For all of these

reasons, the Court can properly exercise specific personal jurisdiction over the defendant and the

defendant's  motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) should

be denied.

Having concluded that the Court has personal jurisdiction over the defendant, defendants

motion to transfer this action pursuant to 28 U.S.C. § 1631 for lack of personal jurisdiction should

also be denied.

The Court next considers defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a).

C.      Transfer

Section 1404(a) permits a district court "[f]or the convenience of parties and witnesses,

[and] in the interest of justice" to transfer an action to another district "where it might have been

brought." Abrams v. General Nutrition Companies, Inc., Civ. No. 06-1820, 2006 WL 2739642,

*8-*9 (D.N.J. Sept. 26, 2006) (citing 28 U.S.C. § 1404(a)).  An action might have been brought in another district if:  (1) venue is proper in the transferee district, and (2) the transferee district can exercise jurisdiction over all the parties.  Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970).   Thus, "[t]he first step in a court's analysis of a transfer motion is to determine whether [personal jurisdiction and] venue would be proper in the transferee district. "  Marino v. Kent Line Intern., Civ. No. 02-4488, 2002 WL 31618496, *2 (E.D.Pa. Nov. 20, 2002) (citing Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F.Supp. 2d 336, 339 (E.D.Pa. 2001)).  If the first prong of the inquiry is satisfied, then the court weighs a series of private and public factors to determine whether transfer is appropriate.  Marino, 2002 WL 31618496 at *2 (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)).

In determining whether to transfer a case, a court must undertake a "flexible and individualized analysis," balancing the factors set forth in § 1404 as well as a number of other case-specific factors.  Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  Section 1404(a) provides three factors for consideration: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice.  28 U.S.C. § 1404(a).  In Jumara, the Court of Appeals for the Third Circuit noted "there is no definitive formula or list of the factors" that a Court must examine but did identify factors to be considered to determine if a case would more conveniently proceed in another venue.  Jumara, 55 F.3d at 879.  The "private interests" factors include: (1) plaintiff's choice of forum; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. Wallace v. Mercantile County Bank, Civ. No. 06-3974,  2006 WL 3302490, *3 (E.D.Pa.

23

Nov. 9, 2006) (citing <u>Jumara</u>, 55 F.3d at 879). The "public interests" include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty arising from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable law. <u>Id.</u>; <u>see</u> <u>also</u> <u>Jumara</u>, 55 F.3d at 879-80.

The movant bears the burden under Section 1404 of demonstrating that transfer is warranted. <u>Abrams</u>, 2006 WL 2739642 at *8; <u>see</u> <u>also</u> <u>Jumara</u>, 55 F.3d at 879; <u>American Tel. & Tel. Co. v. MCI Communications Corp.</u>, 736 F. Supp. 1294, 1305 (D.N.J. 1990) (stating "the burden is on the moving party to show the proposed alternate forum is not only adequate but also more convenient than the present forum"). The party seeking transfer should support its motion with affidavits and other documentation that establishes that the interests of justice and convenience of the parties would best be served by a transfer. <u>Plum Tree, Inc. v. Stockment</u>, 488 F.2d 754, 756-57 (3d Cir. 1973).

    1.    <u>Jurisdiction</u>

Here, the record indicates that California can exercise jurisdiction over the defendant. First, Intouch Group, Inc. is a resident of California. Second, as to plaintiff Bachmann Software & Services, the record shows that plaintiff did business in California. The Agreements were negotiated in part and signed while the plaintiff was in California, the product was sent to California for its use there, and plaintiff traveled to California to perform some of the work described in the Agreements. Thus, the record indicates that the Northern District of California may properly exercise jurisdiction over all parties on all Counts.

2.      Venue

As to venue over a case like this, based only on diversity jurisdiction, the applicable venue statute provides:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391.

Here, California is an appropriate venue for plaintiff's claims.  The defendant resides in California, thus venue lies in California pursuant to Section 1391(a)(1).  Additionally, the contract between the parties was negotiated in part, drafted and signed in California and the plaintiff performed and sent work performed thereunder to California and it was implemented there.  This is where the allegedly faulty code was received, and where the decision not to pay defendant for this work was made.  Bachmann Cert. at ¶ 22; Kaplan Aff. at ¶ 24.  As such, a substantial portion of the acts giving rise to the dispute occurred in California, and therefore, California is an appropriate venue pursuant to Section 1391(a)(2).

Because the plaintiff's claims could have been brought in California, the Court next considers the public and private factors to determine whether or not transfer is appropriate.

3.      Private Factors

The Court considers the private interests factors, which include: (1) plaintiff's choice of forum; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of

25

the witnesses; and (6) the location of books and records. Wallace, 2006 WL 3302490 at *3

(citing Jumara, 55 F.3d at 879).

   i.  Plaintiff's Choice of Forum/Defendant's Preference/Where the Claim Arose

  The "plaintiff's choice of a proper forum is a paramount consideration in any

determination of a transfer request, and should not be lightly disturbed." Aventis Pharma S.A. v.

Sandoz Inc., Civ. No. 06-3671, 2007 WL 1101228, *3 (D.N.J. April 10, 2007)(citing  APV N.

A., Inc. v. Sig Simonazzi N. A., Inc., 295 F.Supp.2d 393, 398 (D. Del. 2002)).  Plaintiff's choice

will prevail "unless the party moving for the transfer can convince the court that its alternative

forum is not only adequate, but *more convenient than the present forum.*" Celgene Corp. v.

Abrika Pharmaceuticals, Inc., Civ. No. 06-5818,  2007 WL 1456156, *4 (D.N.J. May 17, 2007)

(emphasis in original).  There are several situations when a plaintiff's choice of forum is afforded

less deference.  One situation "is where the choice of forum by a plaintiff has little connection

with the operative facts of the lawsuit." Id. (citing Ricoh Co. Ltd v. Honeywell, Inc., 817 F.Supp.

473 (D.N.J.1993)).  This is not such a case.

  Here, although some events relating to this action occurred in California, plaintiff's

choice of forum is afforded no less deference.  First, New Jersey is where a portion of the

negotiations leading to the new agreement partly occurred. Bachmann Cert. at ¶ 15.  Second, the

plaintiff created the intellectual property for which he claims he was not paid in New Jersey. Id.

at ¶ 20.  Third, the plaintiff communicated with the defendant from New Jersey about the product

more than 1,000 times.  Fourth, the product was transmitted from New Jersey to California.

Kaplan Aff. at ¶ 11.  Although it appears that the finished product was sent to California and was

implemented and allegedly failed there, id. ¶¶ 21-23, and the decision not to compensate the

plaintiff presumably occurred there, id. at ¶ 24, it cannot be said that the majority of the events giving rise to plaintiff's claims occurred outside of New Jersey or that New Jersey has little connection to the underlying facts.  As such, the Court finds that plaintiff's choice of forum is afforded full deference and the defendant has failed to show otherwise.

ii.      Convenience of the Witnesses/Parties

The defendant also has not established that the convenience of the parties or the witnesses weigh in favor of transferring this case to California.  First, the defendant has not identified specific witnesses that may have knowledge or the testimony that the particular witnesses would provide.  The defendant vaguely asserts that "additional witnesses, also located in California, include Intouch employees and consultants who negotiated the contracts at issue, who communicated with Bachmann about his services, and who witnessed, fixed, overhauled and rewrote Bachmann's faulty codes," Kaplan Aff. at ¶ 23, and that "all but a few of the potential customers, business alliances, and/or investors that Intouch showed or substantively discussed IBrowz with are located in California." Id.  It does not state who these witnesses are, what it may elicit from these witnesses, and the relevancy to the underlying dispute.  Indeed, the customers would have no unique knowledge about the contractual obligations or the decision not to pay.  Moreover, the defendant has not identified the number of witnesses who have knowledge of these topics, have not represented that such witnesses would not travel to New Jersey, nor has it shown that any proposed witness would find traveling to New Jersey for trial to be inconvenient.  As such, the defendant has failed to meet its burden of showing that the convenience of the witnesses warrants transferring this case to California.

iii.      Location of Books and Records

The location of records is relevant under Section 1404(a) only to the extent that the documents could not be produced in one forum.  See Wallace, 2006 WL 3302490 at *5 (citing Jumara, 55 F.3d at 879).  Here, there is no reason why all relevant books and records could not produced in either forum.  Plaintiff argues that plaintiff's computers and bank records are all located in New Jersey, Pl. Br. at 36, however, all of this information would also be accessible in California.  Defendant's records would likewise be accessible in New Jersey.  Even though plaintiff developed the source code in New Jersey, and the primary source code is located in this forum, this source code was also sent to defendant's repositories in California and as such would also be accessible both here and in California.  As to the bank records which plaintiff claims are kept in New Jersey, defendant would presumably have identical records of the payments in California.  As such, this factor is neutral.

In sum, the defendant has not established that the private interest factors support a finding that California is a more appropriate venue.

   4. <u>Public Interest Factors</u>

The Court next considers the public interest factors of: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the trial judge's familiarity with applicable state law

Here, no party argues, and indeed no evidence has been presented, that would enable the Court to determine that the relative administrative difficulty in the two fora resulting from court congestion weighs in either party's favor.  As such, this factor neutral.  The Court is left to

examine the enforceability of the judgment, the practical considerations, the public policies of the

competing forums, the local interest in deciding local controversies at home, and the familiarity

of the trial judge with the applicable state law in diversity cases.

       i.      <u>Enforceability of the Judgment</u>

Defendant has its assets in California and does not own any assets in New Jersey.  <u>See</u>

Kaplan Aff. at 4.  If plaintiff were to be awarded damages, this judgment may be easier to

enforce in the jurisdiction where all of defendant's assets are located.  Because defendant

maintains no assets in New Jersey, and enforcing a judgment would be easier in California, this

factor weighs in favor of transfer.

       ii.     <u>Practical Considerations</u>

As to the practical considerations that could make the trial easy, expeditious or

inexpensive, the defendant has not satisfied its burden of showing that the location of specific

witnesses and evidence would warrant a transfer of this case to California.  As such, the

defendant has not satisfied its burden here.

      iii.    <u>Local Interest in Deciding Local Controversies/Public Policy</u>

The Court must consider if retaining jurisdiction serves either forum's "'interest in having

controversies decided at home.'"  <u>Miller</u>, 340 F. Supp. 2d at 454 (quoting <u>Lacey I</u>, 862 F.2d at

48).  This factor requires a consideration of the "alleged culpable conduct . . . and the connection

of that conduct to plaintiff's chosen forum."  <u>Id.</u>  Here, New Jersey has a greater interest in

adjudicating this matter than California. This dispute involves a party from New Jersey, a product

created in New Jersey and the breach of contract resulting from non-payment for services

performed in New Jersey.  Moreover, "New Jersey has an interest in trying a case involving

allegations that one of its citizens was the victim of a breach of contract." Travelodge Hotels, Inc. v. Mangat Houston Race Track, LLC, Civ. No. 06-3543, 2007 WL 2156367, * 8 (D.N.J. July 25, 2007).  As such, New Jersey retains a greater interest than California in adjudicating this matter.

iv.    Familiarity of the Trial Judge with the Applicable State Law

Here, it is undisputed that California law governs the claims involving interpretation of the Agreement.  The parties have agreed that the Agreements "be governed by, and construed in accordance with, the laws of the State of California without reference to the law of conflicts of laws thereof." Kaplan Aff. at Ex. A. Kaplan Aff. at Ex C.  Common sense dictates that California courts are more familiar with California law than New Jersey courts.  "[F]amiliarity of the forum court with the applicable law is a consideration," but "it is not enough that a court might have to apply another jurisdiction's law." Calkins v. Dollarland, Inc., 117 F.Supp.2d 421, 429 (D.N.J. 2000)(citing Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd., 847 F.Supp. 1244, 1247 (D.N.J.1994).  Moreover, this Court is regularly called upon to apply the law of other jurisdictions. See, e.g., Colarossi v. Schmid Laboratories, Inc., 830 F.Supp. 230, 240 (D.N.J. July 15, 1993) (interpreting California statute of limitations clause, in addition to laws of New York, Connecticut and the District of Columbia).  As such, the fact that California law governs at least a part of this dispute does not warrant the transfer of this case to California.

In sum, the defendant has not satisfied its burden of showing that the public and private interest factors warrant transferring this case to California.

<u>CONCLUSION</u>

For the reasons set forth above, the Undersigned recommends that defendant's motion to

dismiss this case for a lack of personal jurisdiction, motion to transfer this case to California for lack of jurisdiction pursuant to 28 U.S.C. § 1631, and motion to transfer this case to California pursuant to 28 U.S.C. § 1404(a) be denied.  The parties have ten (10) days from receipt of this recommendation to file and serve objections.

        s/Patty Shwartz_____
        UNITED STATES MAGISTRATE JUDGE

Date: July 21, 2008