Katie A. Gummer
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444
KG-1349

Kenneth E. Keller (CSBN 71450) (admitted *pro hac vice*)
Anne E. Kearns (CSBN 183336) (admitted *pro hac vice*)
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
114 Sansome Street, 4th Floor
San Francisco, CA  94104
Telephone:  (415) 249-8330
Facsimile:   (415) 249-8333

Attorneys for Defendant
Intouch Group, Inc.


## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## NEWARK DIVISION

| | |
|---|---|
| BACHMANN SOFTWARE & SERVICES, LLC, ) | Civil Action No. 08-2025(KSH) |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| INTOUCH GROUP, INC., ) | |
| ) | |
| Defendant. ) | |


## CERTIFICATION OF KATIE A. GUMMER
## IN SUPPORT OF DISCOVERY CONFIDENTIALITY ORDER

I, Katie A. Gummer, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am an attorney at law admitted to practice before this Court, and I am a member

of the law firm of McCarter & English, LLP, counsel to defendant Intouch Group, Inc.

("Intouch").  I submit this Declaration pursuant to Local Civil Rule 5.3(b) in support of Intouch's application for the entry of a Stipulation and Protective Order Re Treatment of Confidential Information ("Protective Order"), attached as Exhibit A.  The parties have consented to the entry of the Protective Order, with the exception of paragraph 5(a).  Plaintiff Bachmann Software & Services, LLC ("Plaintiff" or "Bachmann") requests that this paragraph be included in the Protective Order, thereby allowing the named parties (and their employees and officers) to have access to each other's "Highly Confidential" information as defined in Paragraph 1(b) of the Protective Order.  Defendant Intouch contends, on the other hand, that this paragraph should be deleted from the Protective Order because the named parties (and their employees and officers) should not have access to each other's "Highly Confidential" information.

2.      As discussed in detail below, given the nature of the claims and defenses asserted by the parties, discovery will necessarily focus on several areas of a sensitive proprietary or private nature.  In particular, the parties may be required to produce certain documents and information that would require the disclosure of sensitive commercial, financial, or business information and confidential internal documents, proprietary business and financial information and/or material, non-public private information.  Such information includes Intouch's proprietary and highly confidential source code, the identification of potential investors and/or customers, and/or financial information relating to Intouch's claimed damages.

3.      Given the private and/or proprietary nature of the information that may be sought in discovery in this matter, Intouch would suffer serious injury to its business and be placed at a competitive disadvantage if it is required to produce certain commercial, financial, or business information without the protection of a Protective Order as follows:

        a.      According to Bachmann's own website, Bachmann is in the business of creating

mobile software applications and "specializes in the development of mobile and wireless software for smartphones and handheld devices running Windows, BlackBerry, J2ME MIDP, Apple iPhone, Palm OS, Symbian and Google Android." (*See* Bachmann's website: www.bachmannhandheldsolutions.com).

b.   In his Declaration filed in support of Intouch's Motion to Dismiss for Lack of Personal Jurisdiction ("Kaplan Decl.") (E-Docket No. 13), Joshua Kaplan, Intouch's Chairman and CEO, stated:

- Intouch hired Bachmann to provide certain software services for the development of its flagship product, called the Intouch iBrowz System ("iBrowz"). Kaplan Decl., ¶5.

- This unique and innovative software application will be a new custom phone application designed specifically for mobile phone devices. Id. at ¶2.

- iBrowz will provide "smart phone" users with a customized (based on user preferences and behavior) advertising - supported browsing experience that will allow users to browse the Internet from their mobile device in a manner that is easier to use, easier to read and with better performance than existing mobile browser solutions. Id.

- Bachmann, however, failed to provide Intouch with bug-fee source code for its iBrowz application. See id. at ¶¶ 11, 21.

- Intouch was thus forced to significantly fix and rewrite the bug-laden code at great expense (thousands and thousands of dollars). See id. at ¶¶ 21, 24.

- Intouch never "accepted" the faulty source code from Bachmann as is, and thus, payment did not become due. See id. at ¶24.

As a result, Bachmann sued Intouch for failure to pay for the (faulty) source code. Intouch, in turn, intends to sue Bachmann for damages it incurred as a result of the faulty code, once the jurisdictional issues are resolved.

c.   The "new" source code that Intouch created -- at great expense -- is the bread and butter of Intouch's flagship product, iBrowz. See Kaplan Decl., ¶¶ 2, 11, 21, 24.

It is also "Highly Confidential" as defined by the Protective Order in that it has not been disseminated to third parties, it is of a highly technical nature, would be a significant value to a competitor, and if disclosed could pose a significant commercial disadvantage to Intouch.  (*See* Protective Order, Paragraph 1(b)).

d.  If Bachmann were allowed access to Intouch's source code, Bachmann would easily learn -- free of charge -- how Intouch "fixed" and "overhauled" Bachmann's faulty source code.  Bachmann would thus be provided with a free solution that it could use for its other customers, who are also competitors or potential competitors of Intouch.  Access to and/or the use of such information would thus pose a significant commercial disadvantage to Intouch.

e.  Even if Bachmann is not allowed to "use" information learned in this litigation, it is difficult to see how Bachmann could "unlearn" a "fix" or "new and improved" way of writing source code while working on other customer's projects that have similar issues.  Bachmann, should thus not be allowed access to this highly confidential and propriety information, and Paragraph 5(a) should be deleted in its entirety.

f.  Other information that is also "Highly Confidential" concerns third party potential investors and customers of Intouch.  During the July 31, 2008 Scheduling Conference, the Court indicated that Bachmann should not be given access to this information.  Bachmann's counsel did not object.  If paragraph 5(a) is included in the Protective Order, however, Bachmann will be allowed access.  Paragraph 5(a) should therefore be deleted in its entirety.

g.  There may be other information that will necessarily be "Highly Confidential"

and to which Bachmann should be permitted access.  However, the parties have not yet exchanged their initial disclosures or discovery requests.  Intouch therefore reserves its right to challenge Bachmann's right to have access to other information that is designated as "Highly Confidential."

    h.   Bachmann will not be prejudiced by not having access to information designated as "Highly Confidential" because other persons on its "team" will have access to such information, such as experts, who will be able to fully analyze the code.

    i.   Indeed, this case is not unlike a trade secret or infringement case where an expert is hired to compare the respective parties' code.  It will thus not be necessary for Bachmann to have access to Intouch's code for it to be able to "confront" the accusation that the code was faulty. That is the job of the expert.

    j.   Bachmann is not without recourse if it believes that information has been improperly designated as "Highly Confidential."  Paragraph 12 of the Protective Order provides the procedure for challenging a designation, which includes attempting to resolve the issue informally.  If such attempts are unsuccessful, the challenging party may bring the issue before the Court, with the designating party having the burden to prove such information is "Confidential" or "Highly Confidential."  (*See* Protective Order, Para. 12).

4.    Consistent with Local Civil Rule 5.3, the Protective Order does not authorize the filing of materials under seal with the Court in the absence of a separate order of the Court authorizing the sealing of specific materials.  See Ex. A.

5.    As stated above, under the terms of the proposed Protective Order, the parties are afforded the opportunity to challenge any confidentiality designations, thereby minimizing the

likelihood that non-sensitive documents will be unnecessarily designated as confidential.  Id.

6.     This lawsuit involves private litigants and does not concern a matter of legitimate public interest.  No public entities or officials are named in this lawsuit, and the dispute is not of a public nature.

7.     Accordingly, it is the position of Intouch that it meets the requirements of Federal Rule of Civil Procedure 26(c) and Pansy v. Stroudsburg, 23 F.3d 772 (3d Cir. 1994), for the entry of the attached Protective Order.

8.     For the foregoing reasons, it is respectfully requested that the court grant Intouch's application for a Protective Order.

I declare under the penalty of perjury that the foregoing statements are true and correct.


Dated:  August 20, 2008                              __s/ Katie A. Gummer_____
                                                     Katie A. Gummer